Argued July 9, affirmed July 28, rehearing denied September 15, 1925.

# IN RE GUARDIANSHIP OF ELIZABETH P. WATT.

# CORA J. HOLMAN ET AL. *v.* ELIZABETH P. WATT.

### (237 Pac. 984.)

**Guardian and Ward—Aged Lady Held "Incapable" of Conducting Her Own Affairs and to Require Guardian.**

1. A maiden lady of seventy-three years, who had never conducted her own business or managed her property without assistance, and who had discharged her managers and conveyed all her property to some recent friends, with practically no consideration other than an unsecured promise to care for her, *held* under the evidence "incapable" of conducting her own affairs, within meaning of Section 1319, Or. L.

**Guardian and Ward—"Incapable" Defined.**

2. "Incapable," within meaning of Section 1319, Or. L., means any person who, though not insane, is, by reason of old age, disease, weakness of mind or from any other cause, unable, unassisted, to properly manage and take care of his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.

See (1) 28 **C. J.** 632.    (2) 28 **C. J.** 632.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

This is an appeal from a decree of the Circuit Court reversing the decree of the County Court of Marion County. On the second day of February, 1923, the petitioners Cora J. Holman and others filed their petition praying for the appointment of a guardian for Elizabeth P. Watt, a maiden lady, then about seventy-three years of age. At that time she had two brothers living, to wit: George W. Watt, of Montreal, Canada, and James W. Watt, of Coquille, Oregon. Since that date the last-named brother died.

---

1.  See 14 **R. C. L.** 567.

The petitioners allege that the said Elizabeth P. Watt is a person of advanced years and enfeebled in health and of infirm mind, and owing to such infirmities is incapable of taking care of herself or conducting her own affairs. The petitioners further allege that she was the owner of property in Marion County of the probable value of $8,000.

The County Court, after hearing the evidence, denied the petition. Thereupon, the petitioners appealed to the Circuit Court, and the decree of the County Court was reversed and Thomas Holman was appointed her guardian. The said Elizabeth P. Watt was born in Salem, Oregon, and has lived there all her life, except while traveling in the eastern part of this country. The petitioners are cousins of the said Elizabeth P. Watt.

For about fifteen years prior to the filing of said petition she had lived alone. About two years prior to the filing of the petition she became acquainted with a Mr. and Mrs. G. H. McElroy and a Mrs. Bertha Watson, the last of whom lived with her the greater portion of the two years. The property she owns was inherited from her father, who died many years ago. Until her said brothers moved from Salem, many years ago, they assisted her in the care of her property. When they left Salem they arranged with one T. K. Ford to assist her in the management of her property and the conduct of her affairs. He so carefully looked after her interests that the principal of her property was increased to some extent. After she became acquainted with the said McElroys and Mrs. Watson she took the management of her business affairs from Mr. Ford and for a while relied upon the late A. O. Condit, an attorney of more than thirty years' practice and of unquestioned integrity. In less than a year she relieved

Mr. Condit of the management of her affairs. On the thirteenth day of January she made two separate warranty deeds, conveying to the said G. H. McElroy and Mrs. Bertha Watson all of her real property, for the expressed consideration of $800 for the tract, and the nominal consideration of $10 for another. On the same date she also assigned and transferred to the same persons several notes, secured by mortgages on real property, for the expressed consideration of the face value thereof. The only actual consideration received by the said Elizabeth P. Watt for the conveyance and transfer of said property was the alleged care given to her by the said McElroys and Mrs. Watson, and their promise to maintain her during her life and to pay her an annuity of $200 in installments of $100 each. The assignments and deeds are absolute and unconditional and without reservation of any kind. After this proceeding was instituted, and on the twentieth day of February, 1923, an agreement was drawn up between the said McElroys and Mrs. Watson and the said Elizabeth P. Watt, expressing the undertaking of the former to provide the latter with a home and to support her during her natural life and to pay her the said annuity of $200. This latter agreement was acknowledged and certified and recorded in the public records of Marion County. At the time the assignments were made and the deeds executed and delivered, no security whatever was given to Elizabeth P. Watt for the faithful performance by McElroy and Watson of their agreement. No provision was made in the agreement for the care of Miss Watt in case of the death of McElroy or Watson, or either of them. At the time the transactions referred to were entered into the said McElroys and Mrs. Watson were comparative strangers in Salem. After Miss Watt be-

came acquainted with Mrs. Watson and had lived with her awhile, they moved from the house owned by Miss Watt on Chemeketa Street, in Salem, where she had made her home for a number of years, to a four-acre tract a short distance south of the city limits of Salem, where they have lived since, in a small house of cheap construction, a part of which was formerly used as a chicken-house. Since Elizabeth P. Watt has moved to the four-acre tract, her property on Chemeketa Street has been occupied by Mrs. Mc-Elroy, the wife of the said G. H. McElroy. He has spent a part of his time with his wife at the house on Chemeketa Street and a part of the time with Mrs. Watson and Miss Watt on the said four-acre tract.

The foregoing statement of facts is undisputed and is taken from the testimony of the witnesses McElroy and Watson and the documentary evidence in the record. The testimony touching the mental capacity of Elizabeth P. Watt is conflicting.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Thomas Brown.*

For respondents there was a brief over the names of *Mr. Ivan G. Martin* and *Messrs. Smith & Shields,* with an oral argument by *Mr. Roy F. Shields.*

COSHOW, J.—All of the witnesses for the petitioners express the opinion that Miss Watt was not capable, unassisted, of managing her own business affairs. These witnesses had known Miss Watt longer and more intimately than any of the witnesses who expressed the opinion that she was capable of managing her own affairs. A larger number of witnesses testified that she was capable than those

who testified that she was incapable. It is true that she had an accurate knowledge of her property. She was penurious and carefully conservative, but the evidence is undisputed that she never did, without assistance, conduct her own business or manage her property. Since she has been living with Mrs. Watson and the McElroys she has been under the constant surveillance of one or the other. Mr. Watson testified that Miss Watt insisted upon being accompanied at all times by Mrs. Watson.

Mr. T. H. Ford managed the business affairs for Miss Watt for a number of years. There is no evidence that tends to any degree to reflect upon his ability, integrity or management. Until Miss Watt was associated with Mrs. Watson and Mr. McElroy she was contented to have Mr. Ford advise her and conduct her business. When Mr. Ford objected to Miss Watt leasing the four-acre tract, referred to above, to Mr. McElroy, she took her business out of his hands. There is evidence that Mr. McElroy made disparaging remarks about Mr. Ford.

For nearly a year Mr. Condit attended to her business affairs. There is no evidence at all that he in any way mismanaged her affairs or was to any degree negligent of her business. There is evidence to the effect that Mr. McElroy referred to him as being worse than Mr. Ford.

A large part of the testimony of both McElroy and Watson, as well as the brief of appellant, is devoted to impugning the motive of the petitioners. It is claimed that they are seeking to prevent Miss Watt from disposing of her property in order that they may obtain it. It is also claimed that they never displayed any interest in Miss Watt until they learned that she had disposed of her property. There is no

evidence that any of the petitioners ever attempted in any way to obtain any of Miss Watt's property, or ever attempted in any manner to control her affairs or her conduct.  There was no occasion for them to interfere with her business as long as she entrusted the investment of her funds with such men as T. K. Ford and A. O. Condit.  The conduct of the petitioners, as far as the record discloses, has been above reproach in their relation to Miss Watt.  They are not her next of kin.  She has one brother living. The record does not disclose whether or not her brother who deceased since this proceeding was started left lineal descendants.  In any event the probability of them ever receiving any of her property is very remote.  There is no evidence of any selfish motive actuating the petitioners in this proceeding.

The transactions whereby Miss Watt transferred all of her property to Mr. McElroy and Mrs. Watson indicate very strongly that she was incapable of managing her own affairs.  Both Mr. McElroy and Mrs. Watson testified that it was agreed and understood that the consideration for the transfers was the past attention and care they had given to Miss Watt, their promise to care for her in the future and the payment of an annuity of $200 during her life.  But the transfers of Miss Watt's property were absolute and unconditional.  She did not reserve any interest in the property.  She did not exact any security for the faithful performance of their agreement by McElroy and Watson.  Their agreements were not expressed in writing until after this proceeding was instituted.  There is no provision for the care of Miss Watt in case of the death of either McElroy or Watson.  There is no designation of where her home shall be, although they

both testified. that she desired to live the balance of her life on the said four-acre tract. There is no agreement that they should make their home there and nothing to prevent them from going anywhere they pleased to make their home. In fact, there is no provision for securing to Miss Watt the care and protection they promise as a consideration for all of her property, real and personal, including all of the household effects.

1, 2. We do not have to depend, therefore, upon the preponderance of the opinions of the witnesses as to the mental capacity of Miss Watt. What she has done is before us. It is clear that she never has transacted her own business without assistance. That she accumulated property instead of spending it is doubtless due in a large measure to the care of her brothers while they lived here, and to the fidelity of Mr. Ford and Mr. Condit. Measured by the rule adopted in *In re Northcutt*, 81 Or. 646 (148 Pac. 1133, 160 Pac. 801), Miss Watt is clearly incapable of managing her own affairs. In page 852 of 81 Or., this court, in a well-considered opinion by Mr. Justice HARRIS, adopted a definition of the word "incapable," as used in our statute.

" 'Incapable' shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of * * his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons."

It clearly appears that Miss Watt was unable, without assistance, properly to manage and take care of her property and would be likely to be deceived by artful or designing persons. She is, therefore, in-

capable of conducting her own affairs within the meaning of Section 1319, Or. L.

The decree of the Circuit Court is affirmed, with costs and disbursements in favor of the respondents.

AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.